IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUNE HAWKINS-KIMMEL, and
RICHARD HAWKINS-KIMMEL,

      Plaintiffs,

                                 3:14-CV-00529-PK

   v.

                                 FINDINGS AND
                                 RECOMMENDATION

ANDREW HAWKINS-KIMMEL, and
M&A WEALTH MANAGEMENT, INC., a
Colorado Corporation

      Defendants.

_____

PAPAK, Magistrate Judge:

## INTRODUCTION

Plaintiffs June Hawkins-Kimmel and Richard Hawkins-Kimmel ("Plaintiffs") filed this

action against defendants Andrew Hawkins-Kimmel and M&A Wealth Management, Inc.

("Defendants") alleging breach of fiduciary duty, accounting, and conversion claims under 29

Page 1 - FINDINGS AND RECOMMENDATION

U.S.C. § 80b and Oregon common law; elder abuse under ORS 124.100; and breach of Oregon Securities Law under ORS 59.115, 59.135, and 59.137. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a).

Before the court is defendants' Motion to Dismiss (#16) pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). I have considered the parties' motions and all of the pleadings on file. For the reasons that follow, defendants' motion to dismiss should be denied in part and granted in part.

## FACTUAL BACKGROUND

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). As a preliminary matter, I note that this background is drawn from plaintiffs' well-plead allegations.

Plaintiffs are 75 and 80 years old and are the parents of defendant Andrew Hawkins-Kimmel. Am. Complaint, #9, ¶ 5. Plaintiffs are retired and, in 2002, had assets amounting to approximately $2 million. This amount was distributed among various IRA, bank, and brokerage accounts. *Id.* at ¶ 6. Defendant Andrew Hawkins-Kimmel became plaintiffs' investment advisor in 2002. *Id.* at ¶ 4. In 2004, a sale of real property added an additional $1.6 million to plaintiffs' collective assets. *Id.* at ¶ 7.

Between June 2010 and April 2013, defendant Andrew Hawkins-Kimmel transferred $955,000 of plaintiffs' funds to accounts over which he exercised control. Defendants then invested $463,100 of plaintiffs' funds, in seven separate transactions, into a company titled H-K Resources, which defendant Andrew Hawkins-Kimmel operates and controls. *Id.* at ¶ 11.

Additionally, defendants invested in at least four other companies controlled or operated by defendant, including Sanitas Enterprises LLC, Shavano Enterprises LLC, Sylvathwaite LLC, and Vanilla Sky Enterprises LLC.

Plaintiffs have requested from defendants' records relating to the sale or transfer of their assets. Similarly, plaintiffs have sought information relating to investment account balances and financial records of the entities into which defendants invested plaintiffs' assets. *Id.* at ¶ 12. These requests have proven fruitless, and the alleged misappropriation of plaintiffs' assets has left them "virtually destitute." Pl.'s Opp., #19, 2. Plaintiffs bring this action alleging that defendants' fraudulent concealment, omissions, misrepresentations, and acts entitle plaintiffs to economic damages.

## PROCEDURAL BACKGROUND

Plaintiffs filed a complaint against defendant Andrew Hawkins-Kimmel in the Clackamas County Circuit Court of Oregon on February 13, 2014. Complaint, #1-1, 2. In the complaint, plaintiffs sought recovery of funds, punitive damages, and resulting fees. Defendant Andrew Hawkins-Kimmel, a citizen of Colorado, thereafter removed to this court on April 1, 2014, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). An administrative correction later added M&A Wealth Management, Inc. ("M&A"), a Colorado corporation and registered investment adviser firm, as a named defendant. Am. Complaint, #9, ¶ 3. M&A is owned and controlled by defendant Andrew Hawkins-Kimmel.

On September 22, 2014, defendants filed a motion to dismiss (#16). Then, on October 9, 2014, plaintiffs filed their resistance (#19), to which defendants replied (# 20) on October 27, 2014. On November 4, 2014, the court heard oral argument on defendants' motion. The matter

is fully submitted and ready for decision.

## DISCUSSION

I.    **Motion to Dismiss**

    A.    **Failure to State a Claim**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

    B.    **Pleading Fraud with Particularity**

Page 4 - FINDINGS AND RECOMMENDATION

When sitting in diversity, this court applies state law as to the elements of a plaintiffs' fraud claim, but applies federal law as to how such elements must be pled:

> It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action. While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (citations, internal quotation marks omitted). Federal Civil Procedure Rule 9(b) provides, in relevant part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

The particularity requirement is satisfied if the pleading "identifies the circumstances constituting fraud . . . so that the defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). That is, the allegations must be sufficiently specific "to give defendants notice of the particular misconduct which is alleged to constitute the fraud . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidener*, 780 F.2d 727, 731 (9th Cir. 1985). A complaint is sufficient to give a defendant such notice when it identifies "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (quoting *Ebeidex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Rule 9(b)'s heightened standard applies to all claims that "'sound in fraud.'" *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d

1097, 1103–04 (9th Cir. 2003) ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." (citations omitted)).

## II.    Analysis

Defendants move to dismiss on several grounds.  First, defendants argue that dismissal is proper because plaintiffs fail to state plausible claims as required under Rule 8(a).  Second, defendants contend that dismissal is proper because plaintiffs fail to plead their claims with the particularity required under Rule 9(b).  Third, defendants argue that the court should dismiss plaintiffs' fourth claim of unlawful sale of registered securities under ORS 59.115 because it is barred by the applicable statute of limitations.  Fourth, defendants argue that the plaintiffs' requests for an accounting under claims two and three fail because they are not legally colorable and demand a remedy not provided by statute, respectively.  Finally, defendants argue that plaintiffs' fifth claim fails because plaintiffs did not plead reliance, as required by Oregon common law.

### A.    Failure to State a Claim under Rule 12(b)(6)

Defendants first contend that dismissal is appropriate on the basis that plaintiffs "do not plead facts to support their claims . . . only conclusions and recitations of some of the elements of their claims." Motion, #16, 2.  Beyond providing legal standards for Rule 12(b)(6), defendants do not elaborate on that argument.  Instead, defendants' motion shifts focus to Rule 9(b), under which defendants argue the entire complaint must be examined.  Defendants posit that "each claim relies on the same basic allegation of fraud" and each must therefore satisfy the heightened

Page 6 - FINDINGS AND RECOMMENDATION

pleading requirements of Rule 9(b). Motion, #16, 4. I disagree with defendants' contention that claims two and six rely on elements of fraud. Claim two is an action for a legal accounting under Oregon state law and is analyzed separately below. Claim six sounds in tort, as it simply alleges that defendants unlawfully converted plaintiffs' monies to their exclusive use. Am. Complaint, #9, ¶¶ 46–50. However, I agree that claims one, three, four, and five sound in fraud and should therefore must be scrutinized under Rule 9(b). I conduct that analysis below.

**B.     Failure to Plead Fraud with Particularity under Rule 9(b)**

Defendants request that the court dismiss each of the plaintiffs' claims on the basis that plaintiffs fail to plead them with the particularly required by Rule 9(b). Defendants' argument that all of plaintiffs' claims sound in fraud leans on the following statement from the complaint, which is incorporated into the various claims: "At a date not yet certain, Defendant A. Hawkins-Kimmel devised a plan and scheme to transfer his parents assets to his sole control and use them for his own purposes." Motion, #16, 3, *quoting* Am. Complaint, #9, ¶¶ 4, 14, 18, 22, 31, 40, 46. Thus, defendants argue, the claims allege a unified course of fraudulent conduct and they rely on that course of conduct as the basis for each claim. As explained above, claims one, three, four, and five ("the fraud claims") allege fraud, directly or indirectly. Those claims assert, respectively, that defendants' fraudulent acts and omissions, financial abuse, misleading statements, and scheme to defraud collectively resulted in the financial hardship and loss of assets for which plaintiffs now seek recovery. Complaint, #9, ¶¶ 15, 25, 34, 43. "Where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1103. Here, those enumerated claims "sound in fraud," per *Vess*, and will be analyzed under Rule 9(b).

Defendants maintain that plaintiffs' complaint falls considerably short of the Rule 9(b) standard, as it contains only vague descriptions of the alleged fraudulent investments and, as plaintiffs concede, specifies no information concerning the fruits of those investments. Motion, #16, 4, *quoting* Am. Complaint ¶ 10. Specifically, defendants argue that plaintiffs' complaint is lacking critical information, including: (1) details of any misrepresentations made to plaintiffs; (2) facts supporting loss of any of the $2 million worth of assets on investments; (3) facts supporting plaintiffs' first claim for breach of fiduciary duty; (4) facts supporting claims for punitive damages; (5) facts or details supporting plaintiffs' third claim for violations of the Oregon Elder Abuse statute; (6) facts to support allegations of misleading statements or misrepresentations in violation of ORS 59.115; (7) facts regarding "acts, practices, and a course of business" in which defendants engaged that support plaintiffs' fifth claim for violations of ORS 59.135; and (8) allegations of how and when plaintiffs' assets were allegedly taken by defendants in support of plaintiffs' sixth claim for conversion. Motion, #16, 5–6.

In response, plaintiffs argue that they have plead their claims with the particularity required under Rule 9(b). Additionally, plaintiffs indicate that "particularity" should be taken in context. Plaintiffs point to *Wool v. Tandem Computers, Inc.*, for the general premise that matters peculiarly within an opposing party's knowledge may lead to a relaxation of the Rule 9(b) particularity requirements. 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds*. In *Wool*, plaintiffs who purchased stock in the defendant company brought an action alleging that defendants had fraudulently inflated the market price of such securities before the purchases were made. *Id.* The defendants challenged the allegations because, as here, they were based on "information and belief," and thus failed to specify much of the defendants' purported

wrongdoing. *Id.*. The *Wool* court agreed that "information and belief" is often not enough to satisfy the Rule 9(b) particularity requirements but acknowledged that, where plaintiffs do not themselves have personal knowledge of the underlying facts, a statement of facts upon which the belief is founded will suffice. *Id.* at 1439–40. Here, plaintiffs have provided such a statement of facts. Although the *Wool* plaintiffs proffered a more scrupulous statement, that case involved a complex stock inflation scheme between corporate shareholders and board members. This case involves allegations of a simpler scheme of investment fraud between elderly and infirm parents and their child. Plaintiffs' pleadings and statement of facts should be analyzed in the context of their limited access to the information underlying this dispute.

In *United States ex rel. Lee v. SmithKline Beecham, Inc.*, the Ninth Circuit applied Rule 9(b)'s pleading standard to a complaint alleging a multi-year fraudulent scheme in which the defendant, SmithKline, falsified medical test results when they "fell outside the acceptable standard of error" and then "billed Medicare for these allegedly worthless tests and falsely certified the payment requests that it sent to the government." 245 F.3d 1048, 1050 (9th Cir. 2001). Although the Ninth Circuit ultimately concluded that the plaintiff did not satisfy the Rule 9(b) standard because he "did not specify the types of tests implicated in the alleged fraud, identify the SmithKline employees who performed the tests, or provide any dates, times, or places the tests were conducted," the Ninth Circuit cautioned that "Rule 9(b) may not require [the plaintiff] to allege, in detail, all facts supporting each and every instance of false testing over a multi-year period." *Id.* at 1050–51; *see also U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (finding that, in the context of a False Claims Act case, "a plaintiff does not necessarily need the exact dollar amounts, billing numbers, or dates" to satisfy Rule 9(b)'s

heightened pleading standard but, rather, may "survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted"); *Cooper v. Pickett*, 137 F.3d 616, 626–27 (9th Cir. 1997) (finding that, in the context of a fraud case in which the defendant-company allegedly overstated its revenue by reporting consignment transactions as sales, the complaint need not "allege specific shipments to specific customers at specific times with a specific dollar amount of improperly recognized revenue" to survive Rule 9(b)).

In this case, I find that plaintiffs have plead their fraud claims with the specificity required under Rule 9(b). They have identified the particular role that each of the named defendants played in the scheme, as defendant Andrew Hawkins-Kimmel allegedly owned or controlled and acted by and through defendant M&A Wealth Management Inc. *See Swartz*, 476 F.3d at 765 ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'") (alterations in original) (quoting *Moore*, 885 F.2d at 541)). To the extent information is available to them, plaintiffs have also identified the fraudulent investments at issue, including, for example, a litany of investments into companies controlled by defendant Andrew Hawkins-Kimmel and located in various states, as well as five separate investments into H-K resources, over which Andrew Hawkins-Kimmel serves as principal. Moreover, plaintiffs have set forth a theory as to how the fraudulent scheme operated, alleging that defendants first gained control over all material assets in a guise to manage investments, subsequently disbursed portions of the total assets into various companies controlled by defendants, and thereafter failed to provide plaintiffs with any material information or return on those investments. Defendants argue that

some information has actually been provided in response to plaintiffs' requests, but show little more than having provided a spreadsheet listing several disbursements into one of the above mentioned defendant-controlled companies. Reply, #20, 2. Further, although plaintiffs allege only a general time frame during which defendants fraudulently invested their assets, this is sufficient under the circumstances where plaintiffs allege a ten-year scheme involving an array of investments with no information concerning the purchase or disposition of the products of said investments, management compensation or expenses, profits and losses, or other financial information concerning the proportionate investment interests. *See Lee*, 245 F.3d at 1051; Am. Complaint, #9, 4. Finally, plaintiffs have alleged that the fraud took place in Oregon and Colorado, particularly in the context of investments into the named entities listed in the complaint. Am. Complaint, #9, 3.

In short, plaintiffs have sufficiently set forth the necessary "who, what, when, where, and how" of their fraud claims, in satisfaction of the *Cafasso* standard, above. The complaint, although largely based on information and belief, gives defendants sufficient "notice of the particular misconduct which is alleged to constitute the fraud . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*, 780 F.2d at 731. Further, the fraud claims are not in violation of the alternate purpose and protection afforded to defendants by Rule 9(b), which serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). The wrong here is known. The well-plead facts of plaintiffs' complaint, taken as true, merge to delineate an unfortunate series of events in which defendants allegedly engaged in a fraudulent scheme after taking control of plaintiffs' assets. Contrary to its attempted use here, Rule 9(b) is

not simply a sword to be wielded against all claims sounding in fraud, especially when the accused party has sufficient information to defend himself. *See Lewis v. Berry*, 101 F.R.D. 706, 710 (W.D. Wa. 1984). Accordingly, defendants' motion to dismiss should be denied to the extent it requests dismissal of plaintiffs' fraud claims for failure to plead with the particularity required by Rule 9(b).

### C.    Claim Four and the Applicable Statute of Limitations

Next, defendants argue that plaintiffs' fourth claim is barred under the three-year statute of limitations enumerated in ORS 59.115(6). Specifically, defendants argue that the limitations period bars all claims related to alleged property sales or transactions dating prior to February 14, 2011, three years before plaintiffs' complaint was filed. Motion, #16, 6.

Plaintiffs contend that the statute of limitations has not run. Pertaining to actions brought under 59.115(1)(b), the basis for claim four, the statute provides a three-year limitation period that commences on the date of the allegedly fraudulent sale. ORS 59.115(6). However, the same section includes a two-year period that begins to run "after the person bringing the action discovered or should have discovered the facts on which the action is based." ORS 59.115(6). These claims are asserted by plaintiff June Hawkins-Kimmel's court-appointed conservator, who was assigned "to manage her financial affairs[] on or about May 20, 2014." Opp., #19, 2.

Ordinarily, *when* a plaintiff should have discovered an injury is a question of fact. Under Oregon law, a court may decide the issue as a matter of law if "the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or should have known the critical facts at a specified time." *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 333, 297 P.3d 1287, 1295 (2013). I cannot reach that conclusion. Plaintiffs' complaint does not reveal when June

Page 12 - FINDINGS AND RECOMMENDATION

and Richard Hawkins-Kimmel first became aware of defendants' alleged fraudulent plan and scheme. Moreover, a question of fact exists as to when plaintiffs' knew or should have known of the facts supporting their fourth claim for relief. Accordingly, defendants' motion to dismiss that claim as time-barred should be denied.

**D.    Accounting Claims**

Defendants next contend that plaintiffs' second claim for accounting fails as a matter of law because there is no stand-alone cause of action for accounting and it is simply "an equitable remedy that is sometimes imposed in connection with other claims." Motion, #16, 6. Alternatively, with respect to plaintiffs' third claim for relief, alleging elder abuse, defendants argue that the operative Oregon statute does not enumerate accounting as an available remedy.

**a.    Claim two**

First, concerning the second claim, plaintiffs argue that "Oregon has long required an accounting by fiduciaries under circumstances substantially similar to this." Opp., #19, 6. Plaintiffs cite *Patterson v. Getz* to illustrate the premise that when a fiduciary relationship is created, as here, parties should be afforded access to information pertaining to relevant accounts, no matter how complicated and extensive., 166 Or. 245, 289 (1941), and that an accounting could ultimately serve as a proper remedy.

However, plaintiffs additionally point the court to *Prehall v. Weigel*, where the Oregon Court of Appeals clarified that an action for an accounting may be maintained as a stand-alone claim and is not necessarily a request for an equitable remedy. 232 Or. App. 148 (Or. Ct. App. 2009). The Oregon Court of Appeals rejected the *Prehall* defendants' contention that an action for accounting must be treated as an equitable claim and renders other claims equitable as well.

*Id.* at 159. The court explained that the requested accounting in *Prehall* "was not the type of accounting that sounds in equity, in which 'the account is so complex that justice cannot be done without resort to the superior equipment of the equity court.'" *Id.* (citing *Flaherty v. Bookhultz,* 207 Or. 462, 465, 291 P.2d 221 (1955) ("This court has long recognized a clear distinction between the right to an accounting at law and the right to an accounting in equity")).

Additionally, the Oregon Supreme Court has declared that "when a pleading avers a fiduciary relationship and the prayer seeks an accounting, the averments concerning the fiduciary relationship may suffice to confer jurisdiction upon the [court] . . . [u]nder those conditions, the pleader may be safe in omitting allegations that the account is complicated." *Hubener v. Chinn,* 186 Or. 508, 531 (1949). Further, the Oregon Supreme Court has clearly established that, in certain situations, a "plaintiff ha[s] a right . . . to bring an action for an accounting." *Thompson v. Coughlin,* 329 Or. 630 (2000). For these reasons, defendants' arguments regarding plaintiffs' second claim are without merit and the motion to dismiss should be denied as to that claim.

### b.    Claim three

Plaintiffs' third claim alleges that "failure to provide a complete accounting for [defendants'] activities as the investment advisor for Plaintiffs and [defendants'] failure to make records available upon request, constitutes a violation of ORS 124.110[(1)](a) and (b)." *Id.*; Am. Complaint, #9, ¶ 26. Defendants interpret this to request an accounting. Drawing reasonable inferences, this is more aptly read to allege that defendants, in failing to have provided an accounting in the normal course of investment advising, are in violation of ORS 124.110(1)(a) and (b).

However, assuming, *arguendo,* that defendants' interpretation of this claim is correct, the

Page 14 - FINDINGS AND RECOMMENDATION

stance that it somehow instills a defect on the greater claim is erroneous. While there are

outlined remedies in ORS 124.100 *et seq.*, the statute specifically states that the remedies

provided "are in addition to any other remedy, civil or criminal, that may be available under any

other provision of law." ORS 124.135. As explained above, Oregon law preserves accounting as

an available remedy, thus qualifying it as one of the additional remedies anticipated by ORS

124.135. Given the allegations in this case, it is incorrect to argue that accounting is not a

potential remedy available to plaintiffs' under the statute invoked in their third claim for relief.

For these reasons, defendants' motion regarding the accounting aspect of plaintiffs' third

claim for relief should be denied.

### E.    Failure to Plead Reliance

Finally, defendants argue, briefly, that plaintiffs' fifth claim for alleged violation of ORS

59.135(3) requires proof of reliance and, because plaintiffs do not properly allege reliance,

should be dismissed. Motion, #16, 7. The extent to which plaintiffs plead reliance is illustrated

in the following statement: "Plaintiffs reposed their trust and confidence in A. Hawkins-Kimmel

to safeguard their assets and to provide for their retirement." Am. Complaint, #9, ¶ 4. Plaintiffs

do not provide additional facts supporting those allegations, nor do they provide support in claim

five for the purported misleading statements made by defendant Andrew Hawkins-Kimmel.

The Oregon Supreme Court found in 2012, through extensive analysis of statutory

background and legislative history, that purchasers of securities on the open market must

establish reliance on alleged misrepresentations made in violation of ORS 59.135 and 59.137.

*See State v. Marsh & McLennan Cos., Inc.*, 353 Or. 1, 14, 21–23 (2012) (outlining reliance

requirements in fraudulent misrepresentation, fraud-on-the-market, and omission cases).

Although plaintiffs' do not assert a theory of fraud-on-the-market, their invocation of ORS 59.137 creates a statutory claim for damages based on purchases that plaintiffs made, by and through defendants, after defendants' alleged misleading statements. *See* Am. Complaint, #9, ¶¶ 42, 44, 45. This falls within the scope of the Oregon Supreme Court's analysis and findings in *State v. Marsh & McLennan* that, in asserting violations of ORS 59.137, plaintiffs must establish reliance. 353 Or. at 14.

Plaintiffs argue that Oregon's proof of reliance requirement is specifically limited to misrepresentation claims, rather than those based solely on omissions. Pl.'s Opp., #19, 6. Plaintiffs' averments of fraud associated with claim five, however, do not solely allege omissions. *See* Am. Complaint, #9, ¶ 42–43. Plaintiffs clearly assert that defendant Andrew Hawkins-Kimmel's misleading statements led in part to their damages arising out of the investment scheme at issue. Am. Complaint, #9, ¶ 42.

Thus, to the extent Oregon law requires misrepresentation claims to include averments of reliance, plaintiffs' complaint falls short. Because defendant Andrew Hawkins-Kimmel's purported misrepresentations are key to the foundation of the alleged fraudulent activity, reliance must be plead in conformity with Oregon law. Thus, defendants' motion concerning pleading deficiencies in the reliance element of plaintiffs' fifth claim should be granted. Plaintiffs should be granted leave to amend their complaint to clarify defendants' misrepresentations and properly allege reliance.

## CONCLUSION

Consistent with the foregoing, defendants' motion to dismiss (#16) should be denied to the extent it requests dismissal for failure to satisfy Rule 9(b)'s heightened pleading standard,

alleges failure to bring this action within the applicable statute of limitations, and attacks plaintiffs' claims for accounting. Defendants' motion should be granted as it applies to plaintiffs' failure to plead reliance in their fifth claim for relief. However, plaintiffs should be permitted leave to amend their complaint to add facts necessary to plead reliance in support of that claim.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 20th day of November, 2014.

Honorable Paul Papak
United States Magistrate Judge